# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **CHAMITA GRIFFIN,**<br>*Plaintiff* | §<br>§<br>§ | |
| **v.** | § | **No. 1:26-cv-00160-ADA-DH** |
| **PEPSICO, INC., ICIMS, INC.,**<br>*Defendants* | §<br>§<br>§ | |

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE ALAN D. ALBRIGHT
UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff Chamita Griffin's motion to amend, Dkt. 33; Griffin's motion to recuse, Dkt. 37; Defendant iCIMS, Inc.'s ("iCIMS") motion to dismiss, Dkt. 41; Griffin's motion for leave to exceed page limit, Dkt. 44; Defendant Pepsico, Inc.'s ("PepsiCo") motion to dismiss, Dkt. 58; Griffin's motion for leave to file sur-reply, Dkt. 69, and all related briefing. After reviewing these filings and the relevant case law, the undersigned will recommend that the District Judge dismiss all of Griffin's claims against PepsiCo and iCIMS.

## I. MOTION TO RECUSE

The Court will deny the motion to recuse, Dkt. 37. Griffin moves for the recusal of the undersigned because the undersigned worked for Baker Botts L.L.P. ("Baker Botts"), a firm PepsiCo has retained to represent it in the past, from 2009 to 2012 and did not disclose this fact. *Id.* at 5-6. According to Griffin, the undersigned's orders staying PepsiCo's response deadlines evidence his bias toward PepsiCo. *Id.* at 6-7.

Under 28 U.S.C. § 455, a judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). A judge must also disqualify himself "[w]here he has a personal bias or prejudice concerning a party" and "[w]here in private practice he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter." *Id.* §§ 455(b)(1), (2).

No party has retained Baker Botts in this case. Because the undersigned did not serve as a lawyer in the matter in controversy or work with any lawyer currently assigned to this case, he will not recuse on the basis of his affiliation with Baker Botts over a decade ago. Further, the undersigned's orders staying Defendants' response deadlines are unrelated to his employment at Baker Botts. Finally, neither the undersigned's stay orders nor the length of time the undersigned has taken to rule on Griffin's motions evidence any bias, especially given the volume and length of Griffin's filings, which the undersigned addresses at length in this report. *See In re Deepwater Horizon*, 988 F.3d 192, 197 (5th Cir. 2021) (noting the district court has "broad discretion and inherent authority to manage its docket" (internal quotation marks omitted)).

## II. BACKGROUND

Griffin, a Black woman, alleges that despite being qualified for multiple available jobs at PepsiCo, she was "systematically screened out, ranked down, and rejected by an AI-driven Applicant Tracking System" that iCIMS developed. Dkt. 20,

at 2.[1] Specifically, Griffin alleges that within 24 hours of submitting her application for a job as a "PKI architect" at PepsiCo, she received an automated notification that she had been rejected. *Id.* at 7. According to Griffin, that "rejection was generated without human review and was the product of iCIMS's AI-driven … algorithms." *Id.* A human reviewer reversed the AI's decision and moved Griffin to the interview stage. *Id.* She alleges that this reversal demonstrates that iCIMS's AI tool "was functioning as a discriminatory gatekeeper." *Id.* at 9, 11.[2] Griffin states she was not informed her application would be evaluated using AI and had no opportunity to opt out. *Id.* at 16-17, 19.

According to Griffin, John Quinn, a White man, applied for the same PKI architect position. *Id.* at 12. Although Quinn was not more qualified than Griffin,[3] Quinn's application was not rejected within 24 hours by the AI; instead, his

[1] Griffin moved to amend her complaint to make changes to four paragraphs in her first amended complaint. Dkt. 33 (requesting leave to correct paragraphs 4(b), 4(l), 23, 24, 25, 30, 45, 46, and 48-52 of Griffin's first amended complaint, Dkt. 20). Neither Defendant filed a response to the motion, though iCIMS noted in its motion to dismiss that it "object[ed]" to the amendment. Dkt. 41, at 9. In light of the lack of opposition, and in accordance with Rule 15's bias in favor of amendment, the undersigned will grant Griffin's motion to amend her complaint, Dkt. 33. Fed. R. Civ. P. 15(a); *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) (noting a court's discretion to grant leave is severely restricted by the bias of Rule 15(a) favoring amendment); *Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998) (noting leave to amend should not be denied unless there is a substantial reason to do so). But because Griffin failed to file a new copy of her complaint containing the changes proposed in her motion to amend, the undersigned will continue to cite the first amended complaint, Dkt. 20, as if those changes were incorporated therein.

[2] Griffin also states she applied for a second job at PepsiCo and was again rejected through the AI review system. Dkt. 20, at 7.

[3] In her amendment to the first amended complaint, Griffin alleges that unlike Griffin, Quinn had a Bachelor's degree. Dkt. 33, at 3. She states that Quinn's qualifications nonetheless "do not exceed Plaintiff's in any material category." *Id.*

application was "under review" for 13 days before it was marked with "not moving forward." *Id.*

Alleging that iCIMS is a "joint employer" or "agent" of PepsiCo, *id.* at 35, Griffin sued iCIMS for employment discrimination and "disparate impact" based on race and national origin under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. section 2000e-2; race discrimination under 42 U.S.C. section 1981; race, sex, national origin, and age discrimination under Texas Labor Code section 21.051 ("TCHRA"); and disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. section 12112. *Id.* Griffin also sued iCIMS for "negligent design of AI system," "negligent infliction of emotional distress," deceptive trade practices under Texas law, negligence, fraud, fraudulent concealment, tortious interference with prospective business relations, defamation, "civil rights conspiracy" under 42 U.S.C. section 1985(3), "abuse of process," intentional infliction of emotional distress, unjust enrichment, violations of the Texas Data Privacy and Security Act, violations of the "California Consumer Privacy Act/California Privacy Rights Act," violations of the Electronic Communications Privacy Act, violations of the Computer Fraud and Abuse Act, and "fraud, conspiracy, and concert of action." *Id.* at 35-48.

Defendants each moved to dismiss Griffin's complaint. Dkts. 41; 58. The undersigned addresses each of Griffin's claims below.[4]

---

[4] Griffin moved for leave to file a sur-reply, arguing that PepsiCo's reply brief "raises new arguments, relies on new authority, or characterizes the record in a manner the responding party has not had a prior opportunity to address." Dkt. 69, at 2. "Ordinarily, sur-replies are heavily disfavored, and the decision to allow a sur-reply lies within the district court's discretion." *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024) (internal quotation marks omitted). "But when a party raises new arguments

## III. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

---

or evidence for the first time in a reply, the district court must either give the other party an opportunity to respond or decline to rely on the new arguments and evidence." *Id.* The undersigned finds PepsiCo's reply brief does not raise new arguments or evidence such that a sur-reply is warranted. *See* Dkt. 67. To the extent PepsiCo's arguments regarding formatting could be characterized as new arguments, the undersigned does not rely on them. Accordingly, the undersigned will deny Griffin's motion for leave to file sur-reply, Dkt. 69.

do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## IV. DISCUSSION

### A. Griffin's claims for disparate treatment based on race, sex, and national origin should be dismissed (counts 1, 3, 5, 7, and 23).

"Title VII[5] creates a federal cause of action for two largely separate theories of discrimination, disparate treatment and disparate impact." *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin." *Id.* "Disparate-impact

[5] Discrimination claims under Title VII, section 1981, and the Texas Labor Code are all analyzed under the same Title VII framework. *Wallace v. Seton Fam. of Hosps.*, 777 F. App'x 83, 87 (5th Cir. 2019).

discrimination, on the other hand, addresses employment practices or policies that are facially neutral in their treatment of these protected groups, but, in fact, have a disproportionately adverse effect on such a protected group." *Id.*

Griffin alleges disparate-treatment discrimination based on PepsiCo and iCIMS's failure to hire. Specifically, in counts 1, 3, 5, 7, and 23 of her complaint, Griffin alleges that Defendants[6] violated her rights under Title VII (counts 1, 3, and 5), Section 1981 (count 7), and the TCHRA (count 23) when they used AI to process her application for employment at PepsiCo, resulting in rejection of her application within 24 hours and rejection of Quinn's application after 13 days. Dkt. 20, at 31-35, 42.

To state a claim for discriminatory failure to hire under Title VII, the TCHRA, or Section 1981, Griffin must show that she (1) was in the protected class; (2) applied for and was qualified for the position sought; (3) was not selected; and (4) after rejection, another applicant outside the protected class was hired. *Scott-Benson v. KBR, Inc.*, 826 F. App'x 364, 368 (5th Cir. 2020) (citing *Hassen v. Ruston La. Hosp. Co., LLC*, 932 F.3d 353, 356 (5th Cir. 2019)). While Griffin alleges that Quinn's application was not reviewed by AI and left pending for several days longer than Griffin's, Dkt. 20, at 12, and that "not one U.S.-born American participated in the

[6] Griffin argues iCIMS is a "joint employer" and/or "aided and abetted" PepsiCo's actions with respect to Griffin's employment application. Dkt. 20, at 35. Assuming without deciding that iCIMS is a joint employer or aided and abetted PepsiCo's actions, Griffin's claims against iCIMS should be dismissed for the same reasons her claims against PepsiCo should be dismissed. Further, though Griffin frames her joint-employer argument as "count 8" in her complaint, these allegations do not support an independent claim for liability.

hiring decision," *id.* at 11, Griffin does not allege that an applicant outside any protected class—whether based on race, sex, or national origin—was hired. *See id.* Indeed, Griffin expressly contests that the position was filled. *Id.* at 20. Her disparate-treatment claims fail.[7]

### B. Griffin's claims for disparate impact based on race and national origin should be dismissed (counts 2, 4, 6, and 23).

In support of her disparate-impact claim, Griffin alleges that PepsiCo and iCIMS's use of AI to screen her employment application results "in the systematic screening out of qualified Black applicants at a rate significantly higher than white applicants." Dkt. 20, at 32; *see also id.* at 33 (stating Defendants' use of AI causes "a disparate impact on applicants who are not of Indian national origin and descent"), 34 (alleging iCIMS discriminated by using "AI-driven screening algorithms that systematically excluded Black/African American applicants"),[8] 42.

Griffin failed to administratively exhaust her disparate-impact claims. Under both Title VII and the TCHRA, a plaintiff must exhaust administrative remedies. *Lopez v. AT&T Mobility Servs. LLC*, 767 F. Supp. 3d 406, 421 (W.D. Tex. 2025). As stated above, disparate-impact discrimination "addresses employment practices or

---

[7] Griffin states in response that she meant to allege Defendants discriminated against her "in the process, not the outcome." Dkt. 64, at 3. But this does not save her claim, since Griffin must allege her would-be employer took "some adverse employment action." *Hassen*, 932 F.3d at 356.

[8] The undersigned analyzes Griffin's count 6 for "race discrimination by employment agency" under the same framework as her other disparate-impact claims. *See* 42 U.S.C. § 2000e-2(b) (making it unlawful for an "employment agency" to fail or refuse to refer for employment or otherwise discriminate against individuals based on membership in a protected class).

policies that are facially neutral in their treatment of these protected groups, but, in fact, have a disproportionately adverse effect on such a protected group." *Pacheco*, 448 F.3d at 787. Griffin's charge of discrimination[9] includes allegations related only to her own treatment, not the impact of a facially neutral policy on a protected group. *See* Dkts. 58-1, at 4 (alleging generally that PepsiCo's practices "denied [Griffin] equal opportunity"); 10-1, at 4 (alleging iCIMS's practices "disproportionately excluded" Griffin).[10] Griffin's statement in the PepsiCo charge that PepsiCo's decision to "restrict[]" a certain position to Israel "deprived U.S. citizens … of leadership opportunities" does not describe impact on a protected group, either, since Griffin alleges only that PepsiCo denied "me" consideration for the position and because discrimination based on *citizenship* is not prohibited by Title VII. Dkt. 58-1, at 4; *see Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 95 (1973) (holding that nothing in Title VII "makes it illegal to discriminate on the basis of citizenship"). Accordingly, Griffin's claim for disparate-impact discrimination should be dismissed. *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 472 (5th Cir. 2016) (affirming dismissal of plaintiff's Title VII claims for failure to exhaust his administrative remedies with the EEOC).

---

[9] The Court may consider the charge without converting the motion to dismiss into a motion for summary judgment as the charge is referenced in the amended complaint and is central to Griffin's claims. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *see also Lopez*, 767 F. Supp. 3d at 420 (concluding the court could review an EEOC charge attached to defendant's motion to dismiss).

[10] Further, it is unclear that through filing her EEOC charge Griffin exhausted administrative remedies with respect to her TCHRA claims, since Griffin does not mention the Texas Workforce Commission in either charge. *See* Dkts. 10-1; 58-1; *Lopez*, 767 F. Supp. 3d at 421 (noting an EEOC charge must at least indicate that it is to be filed with the Texas Workforce Commission to satisfy the TCHRA's filing requirements).

Even if Griffin had administratively exhausted her disparate-impact claim, her allegations are still insufficient to state a claim. "To establish a *prima facie* case of disparate impact, a plaintiff must both identify the employment practice that has the allegedly disproportionate impact and establish causation by offering statistical evidence to show that the practice in question has resulted in prohibited discrimination." *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002). "Ordinarily, a *prima facie* disparate impact case requires a showing of a substantial disparity between protected and non-protected workers in regards to employment or promotion." *Id.* (internal quotation marks omitted). Griffin's unsupported assertions that Defendants' algorithms screen out Black applicants or applicants who are not of Indian origin at a higher rate offer insufficient factual content to allow the Court to draw the reasonable inference that Defendants are liable for disparate-impact discrimination. *See* Dkt. 20, at 32, 33; *Iqbal*, 556 U.S. at 678. Griffin's disparate-impact claims fail.

### C. Griffin's claim for "negligent design of AI system" should be dismissed (count 9).

Griffin next alleges that iCIMS breached its "common law" "duty of care to applicants whose employment opportunities would be determined by its AI-driven screening system." Dkt. 20, at 35. To the extent Griffin aims to assert a novel cause of action for "negligent design of AI system," the District Judge should reject the invitation. *See Bittick v. JPMorgan Chase Bank, NA*, No. 4:11-CV-812-A, 2012 WL 1372126, at *5 (N.D. Tex. Apr. 18, 2022) (declining to create a cause of action not previously recognized in Texas or federal law).

To the extent Griffin intended to allege a negligent-design claim, it also fails. "A manufacturer owes a duty to its customers under Texas law to design a product such that its use doesn't involve an unreasonable risk of harm." *Moncibaiz v. Pfizer Inc.*, 532 F. Supp. 3d 452, 461 (S.D. Tex. 2021) (citing *Gonzalez v. Caterpillar Tractor Co.*, 571 S.W.2d 867, 871-72 (Tex. 1978)). "With that particular duty in mind, the elements of a negligent-design claim are otherwise the same as that of a traditional negligence claim—duty, breach, causation, and damages." *Id.*; *see also Martinez v. Walgreen Co.*, 935 F.3d 396, 399 (5th Cir. 2019) (identifying the elements of a traditional negligence claim under Texas law). But a "manufacturer can't be liable for negligent design where the product at issue has been shown to not be unreasonably dangerous under a design-defect analysis." *Moncibaiz*, 532 F. Supp. 3d at 461; *see also Stagg-Shehadeh v. LPM Mfg., Inc.*, No. H-18-4775, 2021 WL 2405605, at *12 (S.D. Tex. May 26, 2021) (stating that to prevail on her negligent-design claim, plaintiff needed to show "a defect in the design that rendered the product unreasonably dangerous").[11] Assuming without deciding that iCIMS is a "manufacturer" that owes a duty to individuals who apply to work at companies using iCIMS's AI-developed software, Griffin does not allege or offer any facts suggesting that iCIMS's software is "unreasonably dangerous." *See* Dkt. 20, at 35-36; *see also*

[11] A products-liability claim for design defect is a strict-liability cause of action under Texas law requiring a plaintiff to show that (1) "the product was defectively designed so as to render it unreasonably dangerous"; (2) "a safer alternative design existed"; and (3) the defect was a "producing cause of the injury for which the plaintiff seeks recovery." *Moncibaiz*, 532 F. Supp. 3d at 458 (citing *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1040 (5th Cir. 2011)).

Dkt. 41, at 16 (arguing iCIMS owed Griffin no legal duty). Griffin's claim for "negligent design of AI system" fails.

### D. Griffin's claims for negligent training and supervision (count 10), negligence per se (count 13), and intentional infliction of emotional distress (count 21) should be dismissed.

According to Griffin, PepsiCo negligently failed to properly train and supervise its employees in the use of the AI hiring system. Dkt. 20, at 36. Griffin also alleges PepsiCo was negligent per se for violations of Title VII and other statutes in its employment decision. *Id.* at 37. And Griffin alleges PepsiCo is liable for intentional infliction of emotional distress ("IIED") based on "deployment of discriminatory AI screening, the conduct of sham interviews with predetermined outcomes, … and the retroactive modification of job requirements." *Id.* at 41. Each of these claims describes alleged discrimination in employment or the hiring decision.

Griffin's negligence claims are preempted by the TCHRA. "Where the gravamen of a plaintiff's case is TCHRA-covered [conduct], the Act forecloses common-law theories predicated on the same underlying [] facts." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). Because the gravamen of Griffin's complaint is employment discrimination and retaliation, the type of wrong the TCHRA was meant to cover, her state-law claims for negligence, negligence per se, and IIED[12] are preempted. *See, e.g.*, *Woldetadik v. 7-Eleven, Inc.*, 881 F. Supp. 2d 738, 744 (N.D. Tex. 2012) (concluding the TCHRA precluded plaintiff from bringing state-

[12] Additionally, Griffin's IIED claim should be dismissed because it is a "gap-filler" tort, and Griffin uses the same facts to support her claims under Title VII and for IIED. *McNeill*, 2023 WL 8532408, at *12 (citing *Miller v. Target Corp.*, 854 F. App'x 567, 569 (5th Cir. 2021)).

law negligence and negligence per se claims because they were based on conduct actionable under the TCHRA's discrimination and anti-retaliation provisions). Griffin's objection that her "emotional distress allegations encompass conduct beyond the employment discrimination itself," Dkt. 44-2, at 56,[13] is belied by the complaint. Dkt. 20, at 41 (alleging IIED based on AI job-application screening, "sham interviews, false statements regarding the interview process, and modification of job requirements").

### E. Griffin's claims for negligent infliction of emotional distress should be dismissed (counts 11 and 22).

Griffin's claims for negligent infliction of emotional distress fail because Texas does not recognize such claims. *Martin v. Grehn*, 546 F. App'x 415, 421 (5th Cir. 2013); *see also Jones v. Driver Pipeline*, No. 3:25-CV-0121-B, 2025 WL 1908301, at *5 (N.D. Tex. July 10, 2025), *reconsideration denied*, 2026 WL 608304 (N.D. Tex. Mar. 4, 2026). Further, because Griffin did not respond to Defendants' arguments regarding negligent infliction of emotional distress, Griffin has forfeited these claims. Dkts. 44-2, at 56 (arguing that Griffin's allegations support an independent claim for IIED); 64; *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023) ("[A] party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings.").

### F. Griffin's DTPA claim should be dismissed (count 12).

Griffin next alleges that Defendants violated the Texas Deceptive Trade Practices Act ("DTPA") by "engag[ing] in false, misleading, and deceptive acts and

[13] The Court will grant Griffin's motion to exceed page limit, Dkt. 44.

practices by concealing the use of AI-driven screening in the hiring process, by failing to disclose that applicant data would be processed by automated decision-making algorithms, and by representing that the application process was fair and non-discriminatory when it was not." Dkt. 20, at 37.

The DTPA makes "false, misleading, or deceptive acts or practices" unlawful. Tex. Bus & Com. Code § 17.46. A "consumer" may maintain a private right of action under the statute. *Id.* § 17.50(a). Under the DTPA, a "consumer" means an "individual … who seeks or acquires by purchase or lease, any goods or services[.]" *Id.* § 17.45(4). Because Griffin did not seek or acquire any goods or services by purchase or lease here, she is not a "consumer" under the DTPA. Accordingly, her claim fails. *See Guajardo v. JP Morgan Chase Bank, N.A.*, 605 F. App'x 240, 249 (5th Cir. 2015) ("The DTPA provides a private cause of action only for 'consumers,' meaning those who purchase a good or service."). Further, Griffin's DTPA claim should be dismissed because Griffin does not contest PepsiCo's assertion that she is not a "consumer" under the DTPA. *See* Dkt. 64, at 12; *McClelland*, 63 F.4th at 1010.

**G. Griffin's claims for age discrimination should be dismissed (counts 14 and 23).**

Griffin asserts that PepsiCo discriminated against her on the basis of age under the Age Discrimination in Employment Act ("ADEA") and that Defendants both discriminated against her under the TCHRA "by deploying an AI-driven screening system that utilized age-proxy data points to screen out older applicants." Dkt. 20, at 38, 42. To establish a prima facie case for discriminatory failure to hire

under the ADEA,[14] Griffin must show that (1) she was over the age of forty at the time she was not selected; (2) she was qualified for the position she sought; (3) she was not selected; and (4) either (a) a candidate outside her protected class was hired, (b) someone younger was hired, or (c) she was otherwise not selected because of her age. *Joseph v. City of Dall.*, 277 F. App'x 436, 439 (5th Cir. 2008); *see also Leal v. McHugh*, 731 F.3d 405, 410-11 (5th Cir. 2013).

Here, Griffin fails to allege that a candidate outside her protected class was hired, someone younger was hired, or that she was otherwise not selected because of her age. *See* Dkt. 20, at 38; *Joseph*, 277 F. App'x at 439; *see also* Dkt. 20, at 14 (alleging the position was not filled). Further, though Griffin states her age "was a *determining factor* in PepsiCo's decision to reject her application," Dkt. 20, at 38 (emphasis added), the ADEA requires her to show that age was the "but-for" cause for the adverse employment action. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019). Griffin's age-discrimination claims should be dismissed.

**H. Griffin's claim based on spoliation should be dismissed (count 15).**

Griffin next argues that PepsiCo and iCIMS engaged in spoliation through "automated deletion or modification of AI scoring data," "modification of the job posting Requisition ID," and "destruction or modification of interview records." Dkt. 20, at 38. Griffin states that she is not opposed to dismissal of this claim without prejudice. Dkt. 64, at 13. But because spoliation is not a cause of action recognized

[14] "The same standards apply to both the ADEA and the TCHRA except at the pretext stage." *Dabbasi v. Motiva Enters., LLC*, 107 F.4th 500, 505 (5th Cir. 2024).

under Texas law, this claim should be dismissed with prejudice. *See Andrade Garcia v. Columbia Med. Ctr. of Sherman*, 996 F. Supp. 605, 616 (E.D. Tex. 1998) ("[T]he proper course of action in a case involving spoliation is to allow a jury instruction regarding the spoliated evidence upon proof of intentional spoliation, not to allow the plaintiff to assert a separate cause of action for spoliation of evidence."); *Johnson v. Dodson*, No. 14-CV-00059, 2014 WL 4513380, at *4 (N.D. Tex. Sept. 12, 2014) (finding spoliation is not a cause of action recognized under Texas law and dismissing the plaintiff's claim under Rule 12(b)(6)).

### I. Griffin's fraudulent-concealment claim should be dismissed (count 16).

Under Texas law, the "doctrine of fraudulent concealment suspends or tolls the running of the limitations period when it has already begun." *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 926 F. Supp. 2d 935, 949-50 (S.D. Tex. 2013) (citing *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011)). In other words, fraudulent concealment "is not a recognized claim in Texas but an affirmative defense to a statute of limitations." *Union Pac. R.R. Co. v. Dorsey*, 651 S.W.3d 692, 696 n.3 (Tex. App.—Houston [14th Dist.] 2022, no pet.). This count should be dismissed.

To the extent Griffin meant to allege fraud by nondisclosure, that claim should also be dismissed. *See id.* (characterizing claim for "fraudulent concealment" as a claim for "fraud by nondisclosure"). The elements of a claim for fraud by nondisclosure are

> (1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff

> did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result of acting without that knowledge.

*Cantillo v. Cantillo*, 627 S.W.3d 367, 370 (Tex. App.—El Paso 2021, no pet.).

Griffin alleges that Defendants concealed their use of AI screening from applicants. Dkt. 20, at 39. Though the duty to disclose is broader in the context of fraud by nondisclosure than in fraudulent concealment, the undersigned agrees with Defendants that they had no duty to disclose their use of AI here. *See* Dkts. 41, at 16; 58, at 10. A duty to disclose "may arise in four situations: (1) where there is a special or fiduciary relationship; (2) where one voluntarily discloses partial information, but fails to disclose the whole truth; (3) where one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue; and (4) where one makes a partial disclosure and conveys a false impression." *Cantillo*, 627 S.W.3d at 370-71 (internal quotation marks omitted). Here, there is no special or fiduciary relationship between Griffin and PepsiCo or iCIMS. *See* Dkt. 20. Griffin makes no allegations that either Defendant voluntarily disclosed partial information but failed to disclose the whole truth, failed to disclose new information making an earlier representation misleading, or made a partial disclosure conveying a false impression relating to AI such that Defendants created a duty to disclose. *See id.*; *see also Hamilton v. Segue Software Inc.*, 232 F.3d 473, 481, n.9 (5th Cir. 2000) ("[T]here must be a special relationship that creates a duty to disclose. This special

relationship does not exist in the employer-employee context.”). Though Griffin contends her evidence demonstrates use of AI in hiring, Dkt. 20, at 14, to the extent that evidence could be construed as a “partial disclosure,” Griffin points only to a screenshot of her job application statuses. *See id.* at 76 (Exhibit M).

Griffin further alleges that Defendants “fabricat[ed] a non-existent education screening criterion to justify the discriminatory rejection” and that PepsiCo’s investigator made “seven provably false statements during a recorded telephone call.” *Id.* at 39. To the extent Griffin meant to raise a fraud claim based on these facts, it fails. To state a fraud claim under Texas law, Griffin must allege (1) Defendants made a material misrepresentation that was false, (2) Defendants knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth, (3) Defendants intended to induce the plaintiff to act upon the representation, and (4) Griffin actually and justifiably relied on the representation and suffered injury as a result. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 653 (Tex. 2018).

With respect to the education requirement, Griffin cannot show the statement was false. *See id.* Griffin alleges that at the time she applied, the job posting required “a Bachelor’s degree *or equivalent experience*” in the alternative. Dkt. 20, at 8 (emphasis original). According to Griffin, the posting “did not state a Bachelor’s degree as a mandatory, non-negotiable requirement.” *Id.* However, the fact that PepsiCo listed its requirements in the alternative does not mean PepsiCo was required to accept Griffin’s application because of her job experience or that PepsiCo

"fabricated" the requirement. As Griffin admits, there was an "education screening criterion" at the time she applied. *Id.* at 8. Any statement PepsiCo made regarding the existence of that requirement was therefore not materially false. *See Orca*, 546 S.W.3d at 653.

With respect to the seven allegedly fraudulent statements, Griffin states that PepsiCo employee Shalanda Franklin stated (1) Griffin was "screened out" based on an education requirement, (2) a Bachelor's degree was a requirement for the position, (3) the screening process involved "human review," (4) PepsiCo does not use AI in its hiring process, (5) the position had been filled, (6) Griffin's application "received the same treatment as all other applicants," and (7) "the investigation was independent and thorough." *See* Dkts. 20, at 13-14; 33, at 4. But Griffin fails to allege that she "actually … relied on the representation and suffered injury as a result." *Orca*, 546 S.W.3d at 653. Each of Franklin's alleged statements were made after Griffin applied for the position, and Griffin suffered no injury as a result of the post-decision statements. Dkt. 20, at 13 (alleging the statements occurred during a December 9, 2025, phone call, after Griffin filed her EEOC charge).

**J. Griffin's claim for tortious interference with prospective business relations should be dismissed (count 17).**

To state a claim for tortious interference with business relations, Griffin needed to allege

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was

> independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*WickFire, LLC v. Woodruff*, 989 F.3d 343, 356 (5th Cir. 2021) (quoting *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)). Because Griffin fails to allege iCIMS's intent, this claim should be dismissed.

To demonstrate that the defendant acted with the conscious desire to prevent a business relationship or knew the interference was certain or substantially certain to occur, "[t]he interfering party must know of the existence of a contract between the plaintiff and a third party or have knowledge of facts that would lead a reasonable person to conclude that a contract existed." *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 123 (Tex. App.—El Paso 1997, pet. denied); *see also Tex. Oil Co. v. Tenneco Inc.*, 917 S.W.2d 826, 834 (Tex. App.—Houston [14th Dist.] 1994), *rev'd on other grounds sub nom. Morgan Stanley & Co. v. Tex. Oil Co.*, 958 S.W.2d 178 (Tex. 1997). A plaintiff should "identify with … particularity what third party it would have formed a business relationship with but for [defendant's] alleged interference." *Pureshield, Inc. v. Allied Bioscience, Inc.*, No. 4:20-CV-734-SDJ, 2021 WL 4492861, at *5 (E.D. Tex. Sep. 30, 2021) (cleaned up).

Griffin fails to adequately allege iCIMS knew of the existence of any prospective business relationship between herself and PepsiCo. *See Hill*, 964 S.W.2d at 123. Griffin states that iCIMS tortiously interfered with her prospective relationship with PepsiCo "by deploying AI-driven screening algorithms that auto-rejected Plaintiff's application without human review, preventing Plaintiff from being considered for the position through the normal hiring process." Dkt. 20, at 39. Based

on Griffin's complaint, iCIMS developed AI systems PepsiCo employed. *See id.* iCIMS was not aware that Griffin would or did apply to work at PepsiCo. *See id.* Even if, as Griffin argues, a system iCIMS designed gave PepsiCo the means to "receive[], process[], and reject[]" Griffin's application, PepsiCo's use of the iCIMS system does not demonstrate that iCIMS knew Griffin applied. *See* Dkt. 44-2, at 60. Accordingly, Griffin's tortious-interference claim fails.

**K. Griffin's defamation per se claim should be dismissed (count 18).**

"While a defamatory statement is one that tends to injure a person's reputation, such a statement is defamatory per se if it injures a person in her office profession, or occupation." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017). To state a claim for defamation, Griffin needed to allege a statement of that character as well as all of the elements of a defamation claim, save damages: "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages, unless the statement constitutes defamation per se." *Id.*

Griffin alleges that iCIMS's AI system "communicated false and defamatory statements about Plaintiff's qualifications to PepsiCo by generating a negative 'Role Fit' or 'Candidate Ranking' score that falsely represented Plaintiff as unqualified[.]" Dkt. 20, at 40. In support of her allegations, Griffin points to an email from PepsiCo to Griffin informing her PepsiCo would not move forward with her application, *id.* at 66, an email from PepsiCo to Griffin inviting Griffin to interview for the role, *id.* at

67, and a PepsiCo careers page showing Griffin's application history, *id.* at 76. *See also id.* at 14, 17 (stating the application portal deploys "Candidate Ranking" and "Role Fit" features). She does not allege or point to any attachments containing the scores themselves.

"If a statement is not verifiable as false, it is not defamatory." *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018). To the extent iCIMS did communicate to PepsiCo regarding Griffin's qualifications for the role and iCIMS's AI system outputs constitute statements by iCIMS at all, Griffin's "Candidate Ranking" and "Role Fit" scores are not verifiable as false, but rather expressions of opinion. Courts have held that similar evaluations of a person's abilities at work are not defamatory. In *Baldwin v. University of Texas Medical Branch at Galveston*, the court determined that supervisor ratings and evaluations of a supervisee's job performance were "simply statements of … opinion and [] not defamatory as a matter of law." 945 F. Supp. 1022, 1035 (S.D. Tex. 1996). In *Robertson v. Southwestern Bell Yellow Pages, Inc.*, the court held that "a statement implying a coworker is incompetent is not a statement of fact, but rather a nonactionable opinion. … [S]uch a general criticism is not objectively verifiable." 190 S.W.3d 899, 903 (Tex. App.—Dallas 2006, no pet.). As in *Baldwin* and *Robertson*, the AI scores are opinions regarding Griffin's qualifications for the PepsiCo role and are not objectively verifiable. True, an evaluator other than iCIMS's scoring system may have found that Griffin was qualified based on her "successful advancement through multiple interviews." Dkt. 44-2, at 60. But this reinforces the undersigned's conclusion that

iCIMS's score was an opinion rather than a verifiable fact. Griffin's defamation claim should be dismissed for failure to allege a false statement.

### L. Griffin's conspiracy claims should be dismissed (counts 19 and 33).

Griffin claims that Defendants engaged in a conspiracy under 42 U.S.C. section 1985(3) and under the common law. Dkt. 20, at 40, 48. In support of her conspiracy claims, Griffin alleges that "Defendants conspired with each other and with members of the all-India hiring chain … by deploying AI-driven screening tools and ethnic patronage networks[.]" *Id.* at 40. Griffin further alleges that "Defendants, acting in concert and conspiracy with each other and with members of the all-India hiring chain, engaged in a fraudulent scheme" to conceal their use of AI, "deploy ethnic patronage networks," "fabricate false justifications for discriminatory rejections," "destroy and alter evidence," and "manufacture a false defense." *Id.* at 48.

Initially, Griffin's conspiracy claim is that Defendants conspired, using AI and "ethnic patronage," to "discriminate[] against Plaintiff." Dkt. 20, at 40. Read in context, Griffin refers to Defendants' alleged discriminatory failure to hire her. "To the extent [Griffin's] claims stem from [T]itle VII, she may not use § 1985(3) as a remedy." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001). Griffin's civil rights conspiracy claims should be dismissed.

Further, Griffin fails to allege any conspiracy in support of her section 1985(3) or civil-conspiracy claims. Section 1985(3) imposes liability on two or more persons who "conspire ... for the purpose of depriving ... any person or class of persons of the

equal protection of the laws." 42 U.S.C. § 1985(3). To state a claim under section 1985(3), Griffin must allege

> (1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus.

*Horaist*, 255 F.3d at 270 n.12.

"An action for civil conspiracy has five elements: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). A civil conspiracy "requires a meeting of the minds on the object or course of action." *Id.* So, a civil conspiracy "exists only as to those parties who are aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement." *Id.*

Griffin fails to make any non-conclusory allegations that iCIMS conspired with PepsiCo or its employees under the meaning of section 1985(3) or common-law civil conspiracy. While Griffin alleges PepsiCo used iCIMS-developed systems for hiring, *see, e.g.*, Dkt. 20, at 4, she does not offer any facts suggesting that PepsiCo and iCIMS communicated with each other regarding Griffin. *See McVea v. Swan*, No. 5:14-CV-073-RP, 2015 WL 4404926, at *8 (W.D. Tex. July 17, 2015) (concluding plaintiff could

not establish a conspiracy under section 1985(3) where there was no evidence any members communicated with each other before the act). Further, if PepsiCo and iCIMS communicated regarding PepsiCo's adoption of the AI system, that communication would have occurred before either party was aware of Griffin or her application. *See Parker*, 514 S.W.3d at 222 (requiring parties to a civil conspiracy to have a "meeting of the minds").

### M. Griffin's claim for "abuse of process" should be dismissed (count 20).

Griffin asserts that iCIMS "abused the hiring process" through deploying its AI system. Dkt. 20, at 41. Under Texas law, an abuse of process claim involves service of process, and requires plaintiffs to establish "(1) an illegal, improper, or perverted use of the process, neither warranted nor authorized by the process, (2) an ulterior motive or purpose in exercising such use, and (3) damages as a result of the illegal act." *Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 815 (Tex. App—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020). Griffin does not allege any issues involving service of process here. To the extent Griffin attempts to allege a novel cause of action based on abuse of the hiring process, the District Judge should decline to recognize it. *See Bittick*, 2012 WL 1372126, at *5 (declining to create a cause of action not previously recognized in Texas or federal law).

### N. Griffin's unjust-enrichment claim should be dismissed (count 24).

The District Judge should also dismiss Griffin's unjust-enrichment claim. Griffin asserts that Defendants "were unjustly enriched at Plaintiff's expense by

collecting and processing Plaintiff's personal data … through the iCIMS platform without adequate disclosure and without providing Plaintiff with the employment opportunity she was qualified for." Dkt. 20, at 43. She states Defendants "derived economic value" from her data. *Id.* She does not offer any facts demonstrating Defendants derived economic value from her data or explain what that economic value entails.

Under Texas law, a "party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Glen LLC v. NFS Leasing Inc.*, No. 5:24-CV-00943-JKP, 2025 WL 899969, at *6 (W.D. Tex. Mar. 24, 2025) (citing *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010)).[15] Griffin insufficiently alleges Defendants obtained a benefit from her data. Griffin does not cite, and the undersigned is not aware of, any authority suggesting data used to train AI tools is an "economic benefit" for the purposes of an unjust-enrichment claim under Texas law. *See* Dkt. 44-2, at 61; *Logan v. Marker Grp., Inc.*, No. 4:22-CV-00174, 2024 WL 3489208, at *10-11 (S.D. Tex. July 18, 2024) (concluding, in the context of a data breach, that plaintiff could not sufficiently plead his unjust-enrichment claim where plaintiff gave defendant his personal information); *Perlaki v. J.B. Poindexter & Co.*, No. 4:24-cv-01649, 2024 WL

[15] The Fifth Circuit has noted that "Texas courts are divided on whether unjust enrichment is recognized as an independent cause of action or is merely recognized as a quasi-contractual theory of recovery." *In re Okedokun*, 968 F.3d 378, 391 (5th Cir. 2020). For the purposes of this report, the undersigned assumes that unjust enrichment is an independent cause of action.

754503, at *9 (S.D. Tex. Mar. 10, 2025) (recommending the district judge conclude that plaintiff did not confer a benefit on defendant when he gave defendant his personal information and nothing else). Griffin's unsupported statement that Defendants "derived economic value" from her data is a "threadbare" statement of an element of the cause of action, and as such, cannot survive Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678. Griffin's claim for unjust enrichment should be dismissed.

**O. Griffin's claim under the Texas Data Privacy and Security Act should be dismissed (count 25).**

Because there is no private cause of action under the Texas Data Privacy and Security Act ("TDPSA"), Griffin's claim should be dismissed. Tex. Bus. & Com. Code § 541.151 ("The attorney general has exclusive authority to enforce this chapter.").

In her response to PepsiCo's motion to dismiss, Griffin states she is unopposed to dismissal of this claim without prejudice, but requests leave to amend. Dkt. 64, at 13. Because there is no private cause of action under the TDPSA, amendment would be futile, and the request should be denied. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).

**P. Griffin's claim under the California Consumer Privacy Act/California Privacy Rights Act should be dismissed (count 26).**

Griffin's claim under the California Consumer Privacy Rights Act ("CCPRA"), as amended by the California Privacy Rights Act, also fails. The CCPRA imposes certain duties on business that collect consumers' personal information. *See, e.g.*, Cal. Civ. Code § 1798.100. The Act defines "consumer" as "a natural person who is a California resident." *Id.* § 1798.140(i). Because Griffin does not allege she is a

California resident, the CCPRA does not apply to her, and her claim should be dismissed. *See* Dkt. 20, at 3 (stating Griffin is "a citizen and resident of Austin").

**Q. Griffin's claim under the Electronic Communications Privacy Act should be dismissed (count 27).**

Griffin accuses iCIMS of violating the Electronic Communications Privacy Act ("ECPA") by "intercepting, accessing, and processing Plaintiff's electronic communications, including her application data and personal information submitted through the iCIMS platform." Dkt. 20, at 44. Based on this conduct, Griffin asserts iCIMS is liable under 18 U.S.C. § 2701, which makes it a crime to "intentionally access[] without authorization a facility through which an electronic communication service is provided" or "intentionally exceed[] an authorization to access that facility" and "thereby obtain[], alter[], or prevent[] authorized access to a wire or electronic communication while it is in electronic storage in such system." *See id.* Section 2707 creates a private right of action for violations of the chapter. 18 U.S.C. § 2707.

Griffin fails to allege a violation of Section 2701, since she does not assert that iCIMS accessed any facility without authorization or obtain, alter, or prevent authorized access to communications stored in any system. *See* Dkt. 20, at 44. To the extent Griffin meant to allege a violation of 18 U.S.C. § 2511(1)(a), which bars intercepting communications, Griffin alleges no non-conclusory facts demonstrating that iCIMS intercepted any communications, attempted to do so, or procured another individual to do so. *See id.* Griffin's claims under these provisions should be dismissed.

**R. Griffin's claim under the Computer Fraud and Abuse Act should be dismissed (count 28).**

Griffin's Computer Fraud and Abuse Act ("CFAA") claim similarly fails. Griffin states that iCIMS "exceeded its authorized access to Plaintiff's personal data by processing Plaintiff's application information through undisclosed AI-driven screening algorithms." Dkt. 20, at 45 (invoking 18 U.S.C. § 1030). Section 1030 involves unauthorized access to a computer and other related activities. 18 U.S.C. § 1030(a) (prescribing punishment for "knowingly access[ing] a computer without authorization"). Since Griffin does not allege iCIMS accessed any computer without authorization, this claim should be dismissed.

**S. Griffin's claim for declaratory judgment fails (count 29).**

Griffin's claim for declaratory judgment fails because declaratory judgment is not an independent cause of action. *Valley Chili Props., LLC v. Truist Bank*, 738 F. Supp. 3d 846, 855 n.4 (W.D. Tex. 2024).

In her response to PepsiCo's motion to dismiss, Griffin states she is unopposed to dismissal of this claim without prejudice and suggests that the Court construe it as a prayer for relief. Dkt. 64, at 13. Because, as described in this report, Griffin fails to state any claim for relief, Griffin's request for declaratory judgment must fail.

**T. Griffin's disability-discrimination claim should be dismissed (count 30).**

Next, to state a claim under the ADA, Griffin must allege she is a qualified individual with a disability. *Equal Emp. Opp. Comm'n v. Wal-Mart Stores, Tex., LLC*, 570 F. Supp. 3d 420, 433-34 (S.D. Tex. 2021). Griffin does not allege that she has any disability or provide any facts to suggest that she does. *See* Dkt. 20, at 46 (alleging

generally that the iCIMS system fails to accommodate "applicants with disabilities"). Her ADA claim fails.[16]

### U. Griffin's claim based on citizenship-status discrimination should be dismissed (count 31).

Griffin purports to bring a claim under 8 U.S.C. § 1324b. Dkt. 20, at 46-47. That provision makes it an "unfair immigration-related employment practice" to discriminate against any individual in employment because of such individual's national origin or, in the case of certain "protected individual[s]," because of such individual's citizenship status. 8 U.S.C. § 1324b(a)(1). "Protected individual[s]" include United States citizens. *Id.* § 1324b(a)(3). Griffin contends PepsiCo violated this provision by discriminating against her based on her U.S. citizenship "in favor of candidates connected to the H1-B visa pipeline." Dkt. 20, at 46.

A person affected by an unfair immigration-related employment practice under Section 1324b may file a charge with the Special Counsel for Immigration-Related Unfair Employment Practices within 180 days of the alleged unfair practice. 8 U.S.C. §§ 1324b(b)(1), 1324b(d)(3); *Yang v. Awbury Grp., LLC*, No. 4:22-CV-0640, 2022 WL 16587254, at *2 (S.D. Tex. Sep. 19, 2022), *R. & R. adopted*, 2022 WL 16577877 (S.D. Tex. Oct. 31, 2022). There is no other mechanism for bringing a private cause of action under the statute. Further, after an administrative law judge issues a final order on

[16] Rather than point to any allegation of disability, Griffin notes in her response that she does "not oppose dismissal of Count 30 without prejudice with leave to replead following discovery of the AI configuration data, which will reveal whether the system incorporated proxies that disproportionately excluded applicants with disabilities[.]" Dkt. 64, at 11. As discussed below, the District Judge should deny leave to amend in the absence of specific allegations *as to her own disability* that Griffin would add to her complaint.

the charge, an aggrieved person "may seek a review of such order in the United States court of appeals." 8 U.S.C. § 1324b(i)(1); *See Yang*, 2022 WL 16587254, at *2.

Griffin's claim should be dismissed because she fails to allege that she filed any charge with the Special Counsel for Immigration-Related Unfair Employment Practices. *See* Dkt. 40. Even if she had, the Court would be required to dismiss Griffin's claim for lack of jurisdiction, since an administrative law judge's final order on such a charge is reviewable by the court of appeals, not the district court. 8 U.S.C. § 1324b(i)(1). This claim should be dismissed without prejudice for lack of jurisdiction.[17]

**V. Griffin's retaliation claim should be dismissed (count 32).**

Finally, the District Judge should dismiss Griffin's retaliation claim. Griffin states that PepsiCo retaliated against her *after* the filing of her EEOC charges by directing its investigator to make false statements, "fabricating" an education-screening criterion, retroactively adding an education requirement, and failing to address or retract certain false statements. Dkt. 20, at 47. She contends that this conduct "would dissuade a reasonable person from making or supporting a charge of discrimination." *Id.*

To state a retaliation claim, Griffin must allege that "(1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action."

[17] Additionally, Griffin is unopposed to dismissal of this claim without prejudice. Dkt. 64, at 13.

*Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021). Griffin's alleged adverse employment action is failure to hire. *See* Dkt. 20, at 47.[18] Because PepsiCo declined to hire Griffin *before* she filed her charge of discrimination—that is, before she engaged in any protected activity—there can be no causal connection between the two. *See id.*; *Wright*, 990 F.3d at 432, 434 ("[I]f an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." (internal quotation marks omitted)). Accordingly, Griffin's retaliation claims fail.

## V. REQUEST TO AMEND

In addition to the requests to amend that the undersigned has already addressed, Griffin argues in her response to iCIMS's motion to dismiss that the Court should grant her leave to amend because "[a]ny deficiencies in the current pleading can be cured through amendment." Dkt. 44-2, at 64. She does not identify any additional facts she would add to cure those deficiencies. *See id.*

"[A] bare request in an opposition to a motion to dismiss … without any indication of the particular grounds on which the amendment is sought," does not constitute a motion for leave to amend a complaint. *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003); *see also Cent.*

[18] Griffin states in her response that PepsiCo's later actions, including false statements and later modification of the job posting are post-charge adverse employment decisions. Dkt. 64, at 10. As none of those actions affected Griffin's application for employment, they are not "adverse employment decisions" as required to state a retaliation claim. *See Wright*, 990 F.3d at 432.

*Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007) ("We generally will not construe unelaborated, nested requests for amendment as motions to amend."). Moreover, Griffin has already amended her complaint multiple times, and as discussed, her amended complaint fails to state any claim. The District Judge should deny Griffin's request to amend her complaint.

## VI. ORDERS AND RECOMMENDATIONS

In accordance with the foregoing discussion, the Court **DENIES** Griffin's motion to recuse, Dkt. 37.

The Court **GRANTS** Griffin's motion to amend complaint, Dkt. 33.

The Court **GRANTS** Griffin's motion to exceed page limit, Dkt. 44.

The Court **DENIES** Griffin's motion to file sur-reply, Dkt. 69.

The undersigned **RECOMMENDS** that the District Judge **GRANT** PepsiCo and iCIMS's motions, Dkts. 41; 58, and **DISMISS** each of Griffin's claims **with prejudice** except her claim under 8 U.S.C. § 1324b, which the District Judge should **dismiss without prejudice**.

The undersigned **FURTHER RECOMMENDS** that the District Judge **DENY** the remaining pending motions, Dkts. 4; 10; 15; 16; 17; 18; 24; 42; 49; 50; 55; 56; 70, as **MOOT**.

## VII. WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous,

conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED July 20, 2026.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE